HOLLY McCLAIN, ET AL., PLAINTIFFS AND APPELLANTS, v. NERCO, INC., AND SPRING CREEK COAL COMPANY, DEFENDANTS AND RESPONDENTS. DANIEL MARTINI, PLAINTIFF AND APPELLANT, v. NERCO, INC., AND SPRING CREEK COAL COMPANY, DEFENDANTS AND RESPONDENTS. JAY ELLIS, PLAINTIFF AND APPELLANT, v. NERCO, INC., AND SPRING CREEK COAL COMPANY, DEFENDANTS AND RESPONDENTS.

No. 87-12.
Submitted June 4, 1987.
Decided June 26, 1987.
738 P.2d 1285.

Nye & Meyer, Jerrold Nye argued, Billings, for plaintiffs and appellants.

Murphy, Robinson, Heckathorn & Phillips, C. Eugene Phillips, Kalispell, Stoel, Rives, Boley, Fraser & Wyse, Pamela L. Jacklin argued, Portland, Or., for defendants and respondents.

MR. JUSTICE WEBER delivered the Opinion of the Court.

Sixty-five coal miners sued NERCO, Inc. (NERCO) and Spring Creek Coal Company (Spring Creek) on several theories evolving from the miners' job termination. The parties settled all claims except those embodied in a fourth amended complaint. The District Court for the Thirteenth Judicial District, Yellowstone County, granted summary judgment to NERCO and Spring Creek on the fourth amended complaint. Plaintiffs appealed. We affirm.

The issue is whether the District Court erred in granting summary judgment to NERCO and Spring Creek on the plaintiffs' fourth amended complaint.

Spring Creek Coal Company, located near Decker, Montana, mined and sold coal to a Houston company called Utility Fuels, Inc. (UFI). UFI resells the coal to Houston Lighting and Power Company (HL&P) and its sister company, Houston Industries, Inc. (HI). UFI, HL&P, and HI will be collectively referred to as "the Houston group".

While the Spring Creek Mine was being developed, Spring Creek and the Houston group entered into a long-term contract under which Spring Creek agreed to provide approximately 500,000 tons of coal per month to the Houston group for 25 years. Spring Creek first delivered coal to the Houston group in 1980. By 1981, the Houston group claimed they had significant operational problems in burning the coal-because of the high sodium content in the coal's ash.

During 1981 and 1982, Spring Creek and the Houston group negotiated two amendments to the coal supply agreement. The amendments permitted the Houston group to temporarily take delivery of substantially reduced quantities of coal in exchange for paying Spring Creek a "shortfall" fee for each ton not accepted. Spring Creek reduced its coal production substantially during the first half of 1982 to approximately 175,000 tons per month, but retained its existing work force.

On July 15, 1982, the Houston group filed a lawsuit against Spring Creek and NERCO to reduce permanently the amount of coal UFI had to accept to 175,000 tons per month. At the same time, the Houston group notified Spring Creek that their alleged inability to

burn Spring Creek coal constituted a "force majeure" under the contract.

On July 21, 1982, NERCO, Spring Creek, and the Houston group met. Negotiations indicated settlement could be reached if Spring Creek would allow the Houston group to reduce the quantities of coal it would accept. On July 23, 1982, Spring Creek implemented a reduction in force (RIF), reducing its work force by half. The plaintiffs were terminated on this day. On July 28, 1982, NERCO, Spring Creek, and the Houston group signed an Interim Agreement which provided for a continuation of the earlier agreed 175,000 tons a month, for temporary settlement of their dispute, and for dismissal without prejudice of the Houston group lawsuit.

On February 10, 1983, Spring Creek and the Houston group executed their first agreement in principle which provided for the sale to the Houston group of substitute coal from an unaffiliated mine until NERCO developed its Antelope Mine. This agreement eliminated the need for a workforce sufficient to produce 500,000 tons of coal per month because it provided that the Houston group would continue to pay for only 175,000 tons of coal per month from the Spring Creek mine. At the time the record on summary judgment had closed, Spring Creek and the Houston group had not reached a final resolution of their dispute despite further negotiations.

After their job termination the plaintiffs filed their complaint containing a number of different theories. After settlement was reached on all other issues, a fourth amended complaint was filed which alleged Spring Creek had assured plaintiffs of job security based upon the long-term coal contract and then engaged in a conspiracy with NERCO and the Houston group under which a sham lawsuit was brought in order to create a ground for the termination of plaintiffs' employment.

Did the District Court err in granting summary judgment to NERCO and Spring Creek on the plaintiffs' fourth amended complaint?

First, we must address and dispose of the contention made by plaintiffs' attorney during oral argument that two claims had been preserved and pled in the fourth amended complaint. Although neither the fourth amended complaint nor the agreed statement of record on appeal addressed the manifestations of job security theory, plaintiffs' counsel argued orally that this theory had not been previously settled and had been preserved. We disagree.

A settlement was reached of all claims except the conspiracy claim.

Since the plaintiffs would not agree to a settlement of that claim, the parties agreed that a fourth amended complaint would be filed dismissing all claims except the conspiracy claim.

Accordingly, the fourth amended complaint was filed. The caption to that complaint provided in pertinent part:

"NOW COME the plaintiffs . . . to dismiss with prejudice all claims, factual theories and legal theories upon which relief could be granted, except for the plaintiffs' claim for breach of covenant of good faith and fair dealing in employment *based upon factual theories of conspiracy pleaded below* . . . By this Amendment the plaintiffs are effectuating the partial settlement reached in the above-captioned matters December 15, 1985, *and in doing so Plaintiffs waive any and all issues of appeal as to matters set forth or which could have been set forth in any complaint filed in connection with the above-captioned matters except the Fourth Amended Complaint.* (Emphasis added.)"

The complaint went on to outline one claim for relief:

"11. In accord with the statements of fact and belief set forth above, plaintiffs contend that the workforce reduction was not motivated by economic concerns resulting from a legitimate dispute between Spring Creek and the Houston group. Rather, plaintiffs state that defendants NERCO, Inc. and Spring Creek Coal Company have breached their duty of good faith and fair dealing in their employment relationship with plaintiffs by creating the appearance of a dispute requiring a production cutback at the Spring Creek Coal Mine in a scheme to wrongfully deprive plaintiffs of their employment."

We also considered the agreed statement of record on appeal which the parties offered, as well as the settlement agreement between the parties. Both the agreed statement and the settlement agreement demonstrated that only the conspiracy claim was being asserted on appeal.

We conclude that plaintiffs' attempt to make the job manifestation claim is not supported by the record. Clearly the job manifestation claim was settled and forever waived by the plaintiffs. Therefore, we will consider only the breach of covenant of good faith and fair dealing claim based upon the alleged conspiracy.

Essentially, the fourth amended complaint alleges that NERCO and Spring Creek conspired with the Houston group to create the appearance of a dispute requiring a coal production cutback and the

termination of plaintiffs' jobs. Plaintiffs contend that a conspiracy is demonstrated by comparing the dates of the following events:

July 15, 1982 - The Houston group filed its lawsuit against NERCO/Spring Creek;

July 21, 1982 - NERCO/Spring Creek negotiate with the Houston group;

July 23, 1982 - Spring Creek layed off plaintiffs;

July 28, 1982 - NERCO/Spring Creek and the Houston group sign Interim Agreement.

Plaintiffs assert that the timing of the foregoing events demonstrates conspiracy on the part of NERCO/Spring Creek and a breach of their duty of good faith and fair dealing.

The question is whether there is any evidence which supports the plaintiffs' conspiracy theory so that summary judgment was improper. After a careful review of the record, we conclude plaintiffs have not presented any evidence of a conspiracy. There is no genuine issue of material fact. Spring Creek and NERCO are entitled to judgment as a matter of law.

Several factors lead us to this conclusion. *First*, notwithstanding extensive depositions by the plaintiffs of Spring Creek and NERCO officers, as well as extensive interrogatories, plaintiffs have failed to present any positive evidence of a conspiracy between the Houston group and NERCO/Spring Creek. Plaintiffs' argument is limited to the timing of the job dismissals in relationship to the filing and subsequent dismissal of the Houston group lawsuit. We conclude that the timing of such actions in and of itself is not sufficient to constitute any evidence of conspiracy. *Second*, NERCO/Spring Creek presented positive evidence that the Spring Creek mine was facing severe economic times because the Houston group, its principal customer, filed the lawsuit to permanently reduce the coal it had to accept and also gave notice of force majeure as a basis for contract cancellation. The unrebutted affidavits of the chief executive officer for NERCO and Spring Creek as well as the vice president and chief financial officer of NERCO and Spring Creek, establish that the result of the Houston group's refusal to take or pay for contract quantities of coal was potentially devastating for NERCO/Spring Creek. The record contains credit agreements between NERCO and various lenders, letters from NERCO to lenders outlining the status of NERCO's financing after the filing of the lawsuit, and internal documents regarding NERCO's tenuous financial position because of the lawsuit and possible loss of the Houston group's contract. We con-

clude that the record establishes that Spring Creek was under extreme financial pressure to reach an immediate agreement resolving the lawsuit in order to keep from losing its multi-million dollar line of credit. *Third,* the controversy between the Houston group and NERCO/Spring Creek still has not reached a final resolution, which tends to negate plaintiffs' theory that a conspiracy existed in 1982.

Plaintiffs have failed to raise an issue of ultimate fact. We affirm the District Court.

MR. CHIEF JUSTICE TURNAGE and MR. JUSTICES HARRISON, SHEEHY, GULBRANDSON, HUNT and McDONOUGH concur.